**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No. 06-cv-01719-REB

D. CURTIS WILLOUGHBY,

    Plaintiff,

v.

MICHAEL J. ASTRUE,[1] Commissioner of Social Security,

    Defendant..

**ORDER REVERSING DISABILITY DECISION**
**AND REMANDING TO COMMISSIONER**

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1], filed August 30, 2006, seeking review of the Commissioner's decision determining the monthly amount of disability insurance benefits to which plaintiff is entitled under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse the decision and remand this case to the Commissioner.

### I. FACTUAL AND PROCEDURAL BACKGROUND

As a result of congenital amblyopia, plaintiff has been legally blind since infancy.

---

[1] Michael J. Astrue was confirmed by the Senate to replace Jo Anne Barnhart as the Commissioner of Social Security on February 1, 2007. Thus, he is substituted as the defendant in this suit. **FED.R.CIV.P.** 25(d)(1). By virtue of the last sentence of 42 U.S.C. § 405(g), no further action need to taken to continue this lawsuit.

(*See* Tr. 169-171.) Plaintiff first applied for disability insurance benefits in 1971 but did not receive any cash benefits at that time because he found substantial gainful employment. Plaintiff worked as an IT specialist in computer administration and programming from September, 1972, through May, 2001, when he was laid off. (Tr. 75-76.)

Plaintiff subsequently filed his current application for disability insurance benefits on September 4, 2001. That application was granted on the basis of statutory blindness, and plaintiff was awarded benefits as of July 1, 1974. However, plaintiff disagreed with the Commissioner's calculation of the amount of his average monthly benefit under the so-called "average-indexed monthly earnings" ("AIME") method and maintained that the alternative "average monthly wage" ("AMW") method was the appropriate formula. After his motion for reconsideration was denied, plaintiff filed a request for a hearing before an Administrative Law Judge. This hearing was held on August 16, 2004.

Following the hearing, the ALJ issued an opinion amending plaintiff's onset date to December 15, 1971, but finding that the Commissioner had been correct in utilizing the AIME method in determining the monthly benefit due plaintiff. Plaintiff appealed that decision to the Appeals Council. The Appeals Council found that the ALJ erred in his determination of the onset date, which was amended to October 1, 1966. In all other respects, however, the Appeals Council affirmed the ALJ's decision. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A claimant who meets the definition of blindness set forth in the Social Security Act is considered "statutorily blind." 42 U.S.C. § 416(i)(1)(B); 20 C.F.R. § 404.1581.[2] Although statutory blindness is considered a disability *per se* under the Act, it does not automatically create an entitlement to disability insurance benefits. Statutorily blind claimants under age 55 are entitled to disability insurance benefits only if their disability results in an inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1582. A blind claimant over age 55 is entitled to disability insurance benefits if he is unable to use the skills or abilities like the ones he used in any past substantial gainful activity which he performed regularly and for a substantial period of time. 20 C.F.R. §§ 404.1583 & 404.1586(a)(3). Nevertheless, when a claimant is not eligible for disability insurance benefits based on his work activity but otherwise satisfies the statutory definition of blindness, his period of disability continues. 20 C.F.R. § 1586(b).

When a claimant is entitled to disability insurance benefits, the monthly amount of such benefits is based on the calculation of the claimant's primary insurance amount ("PIA"). 20 C.F.R. § 404.201. The primary methods for calculating the PIA are the AIME and the AMW methods, which apply in the following circumstances:

> (1) If after 1978 you reach age 62, or become disabled or die before age 62, we compute your primary insurance amount under what we call the average- indexed- monthly-earnings method, which is described in §§ 404.210

---

[2] "Statutory blindness is defined in the law as central visual acuity of 20/200 or less in the better eye with the use of correcting lens. An eye which has a limitation in the field of vision so that the widest diameter of the visual field subtends an angle no greater than 20 degrees is considered to have a central visual acuity of 20/200 or less." 20 C.F.R. § 404.1581. In addition, the claimant's blindness "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

> through 404.212. The earliest of the three dates determines the computation method we use.
>
> (2) If before 1979 you reached age 62, became disabled, or died, we compute your primary insurance amount under what we call the average-monthly-wage method, described in §§ 404.220 through 404.222.

20 C.F.R. § 404.204(b). Under the AMW method, PIA is determined by averaging a claimant's social security earnings over the length of time he can reasonably have been expected to have worked under social security after 1950 or after he turned 21, whichever is later. 20 C.F.R. § 404.221(a). By contrast, the AIME method relies on indexed rather than actual earnings. *See* 20 C.F.R §§ 404.210(b) & 404.212.[3] If more than one computation method is applicable, the PIA is the highest of all those computed under the methods for which the claimant is eligible. 20 C.F.R. § 404.204(a).

One additional factor that affects the calculation of a claimant's PIA is the claimant's "period of disability." "A period of disability is a continuous period of time during which you are disabled." 20 C.F.R. § 404.320(a); *see also* 42 U.S.C. § 416(i)(2)(A).[4] The period of disability, sometimes called the "disability freeze," can be

---

[3] Indexed earnings are determined by multiplying a claimant's actual earnings in a given year by the ratio of average total wages of all workers in the second year before the claimant reaches age 62 (the "indexing year") to the average total wages of all workers in the given year. 20 C.F.R. § 404.211(d).

[4] A claimant is entitled to a period of disability when the following conditions are met:

> (1) You have or had a disability as defined in § 404.1505.
>
> (2) You are insured for disability, as defined in § 404.130 in the calendar quarter in which you became disabled, or in a later calendar quarter in which you were disabled.
>
> (3) You file an application while disabled, or no later than 12 months after the month in which your period of disability ended. . . .

used to exclude earnings of certain years from the computation of a claimant's average monthly earnings. 20 C.F.R. § 404.320(a). However, because the disability freeze is intended to protect claimants from a loss of or reduction in the amount of their benefits, it will not be applied where doing so would result in a lower monthly benefit amount. 20 C.F.R. § 404.320(a). This regulation implements the "savings clause" of the Social Security Act, which provides

> None of the provisions of this subchapter relating to periods of disability shall apply in any case in which their application would result in the denial of monthly benefits or a lump-sum death payment which would otherwise be payable under this subchapter; nor shall they apply in the case of any monthly benefit or lump-sum death payment under this subchapter if such benefit or payment would be greater without their application.

42 U.S.C.A. § 420.

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is

---

(4) At least 5 consecutive months go by from the month in which your period of disability begins and before the month in which it would end.

20 C.F.R. § 404.320.

overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III. LEGAL ANALYSIS

Because plaintiff became disabled prior to 1979, he was entitled to have his PIA calculated under the AMW method. *See* 20 C.F.R. §§ 404.204(b)(2) & 404.220(a). Plaintiff also was eligible for the AIME method because he attained age 62 after 1978. *See* 20 C.F.R. §§ 404.204(b)(1) & 404.210(a). Under either method, years within the claimant's period of disability are not counted unless the PIA would be higher if they were. 20 C.F.R. §§ 404.211(b)(2) & 404.221(b)(2). Plaintiff argues that because his benefits would be highest under the AMW inclusion method, the savings clause entitles him to that calculation. The Commissioner counters that because plaintiff's period of disability was excluded in calculating his PIA under the AIME method, it likewise must be excluded in calculating his PIA under any other method.[5]

The parties' briefs address the issue whether this "all or nothing" approach, as expressed in the Commissioner's regulations, is an appropriate interpretation of the savings clause. However, neither side has addressed the actual rationale of the

---

[5] The Commissioner here does not advance the argument, as he apparently did at the administrative level, that the AMW inclusion method is inapplicable to plaintiff by virtue of 42 U.S.C. § 415(b)(4).

Administrative Law Judge on whose opinion the Commissioner's final decision rests. Because that opinion defines the limits of my review of the Commissioner's benefit determination in this case, however, I must do so.

Before the ALJ, the Commissioner argued that the savings clause should be interpreted in an "all or nothing" fashion when multiple periods of disability are in issue. (*See* Tr. 24.)  The ALJ found this interpretation consistent with the plain wording of the savings clause, and purported to adopt the reasoning of *Jernigan v. Chater*, 973 F.Supp. 534 (D. Md. 1997), in finding that "the Administration's 'all or nothing' interpretation is operational in terms of this case" (Tr. 24).  The ALJ then went on to find, however, that the savings clause did not apply to plaintiff at all because he had only one period of disability, whereas the savings clause referred to multiple "periods of disability." (Tr. 25.)  Nevertheless, the ALJ held that the "second section of the savings clause" – that requiring that a claimant be given the highest PIA for which he is eligible – supported the Commissioner's benefit determination.  Finally, although he found the language of the statute to be clear and unambiguous, the ALJ also concluded that the legislative history of the savings clause supported the Commissioner's all or nothing interpretation.

There are at least three problems with the ALJ's decision.  First, although the ALJ purported to adopt the reasoning of the *Jernigan* court, nothing in the ALJ's decision itself is remotely related to that opinion.  The *Jernigan* court, although approving the Commissioner's all or nothing approach, held that the savings clause, by its express terms, affected only those provisions of the Social Security Act relating to

7

periods of disability. ***Jernigan***, 973 F.Supp. at 537.  Nevertheless, the court held that the claimant, who like plaintiff here, had been statutorily blind since birth, was entitled to the inclusive AMW method in calculating his PIA by virtue of 42 U.S.C. § 416(i)(1), which provides a definition of disability but does not invoke the concept of "period of disability." ***Id.*** at 538.  Regardless of whether one agrees with the reasoning of ***Jernigan***, it bears little resemblance to the ALJ's underlying rationale or ultimate determination in this case.

Second, the ALJ's opinion is internally inconsistent.  Having asserted that "the Administration's 'all or nothing' interpretation [of the savings clause] is operational in terms of this case" (Tr. 24), the ALJ nevertheless then found the savings clause inapplicable to, and, thus, one would assume, not operational in, plaintiff's case.[6]  In the very next paragraph, the ALJ then resurrected the savings clause again, at least in part, finding the Commissioner's all or nothing interpretation consistent with that portion of the savings clause that requires the PIA to be the highest to which the claimant is entitled.  The ALJ failed to offer any explanation as to why the savings clause should be parsed in this manner, and certainly, the plain language of the statute manifests no such dichotomy.

Finally, and most important, the ALJ's opinion fails as an exercise in statutory interpretation.  The ALJ found that because the savings clause refers to "periods of disability" in the plural, rules of statutory construction required him to strictly construe

---

[6]  I would also note that the Commissioner's argument before me is contrary to the ALJ's determination, which the Commissioner has not challenged in this appeal, that plaintiff had but one period of disability.

8

that choice as referring only to instances in which multiple periods of disability are at issue. (Tr. 25.) The case cited by the ALJ in support of that proposition, ***Barr v. United States***, 324 U.S. 83, 65 S.Ct. 522, 89 L.Ed. 765 (1945), says no such thing. Indeed, it supports the exact opposite conclusion. ***See id.***, 65 S.Ct. at 525 (citing 1 U.S.C. § 1) ("In determining the meaning of any Act of Congress, unless the context indicates otherwise . . . . words importing the plural include the singular"). Moreover, as a matter of English usage, it makes sense to synchronize the plural noun "provisions" with its subject, "periods of disability." It would be curious, in other words, for the statute's drafters to refer to "provisions dealing with period of disability." Furthermore, as noted above, the ALJ's attempt to parse the savings clause into two separate sections is not supported by the plain language of the statute. Nor does the legislative history of the savings clause save the ALJ's ultimate conclusion. The passage cited by the ALJ in support of his determination reads:

> Thus, for example, [this section] permits a blind individual who, subsequent to establishing a period of disability, receives wages or derives self-employment income to include the amount thereof in his benefit computation (with the months and quarters in the period being counted as elapsed months and quarters), if this would produce a higher benefit than if he was credited with a period of disability. He could not, however, include some periods of disability and not others.

(Tr. 27-28) (citing S. Rep. No. 83-187(1954), *reprinted in* 1954 U.S.C.C.A.N. 3710, 3785) (alteration in original). Although this language speaks of multiple periods of disability, nothing therein suggests that the savings clause was intended to apply *only* when multiple periods of disability are at issue. Moreover, whatever the relevance of

9

the passage when multiple periods of disability are involved,[7] here plaintiff was found to have only one period of disability. In that circumstance, the cited language arguably would seem to support plaintiff's argument that he is entitled to the AMW inclusion method.

For these reasons, I find that the Commissioner's decision cannot stand on the weight of the ALJ's opinion. However, I cannot say whether the Commissioner's benefit determination might not be supportable on some other basis. I, therefore, will remand this matter for further proceedings on that issue.

**THEREFORE IT IS ORDERED** as follows:

1. That the conclusion of the Commissioner through the Administrative Law Judge regarding plaintiff's benefits determination is **REVERSED**; and

2. That this case is **REMANDED** to the ALJ, with directions to reconsider the parties' arguments regarding the appropriate calculation of plaintiff's primary insurance amount and to recalculate plaintiff's monthly disability insurance benefits in a manner not inconsistent with this opinion.

Dated July 16, 2007, at Denver, Colorado.

                                      **BY THE COURT:**

                                      **s/ Robert E. Blackburn**
                                      **Robert E. Blackburn**

---

[7] This legislative history does appear to support that section of the Program Operating Manual Systems (POMS) on which the Commissioner has relied in this appeal. *See* **Program Operation Manual Systems (POMS)** RS 00605.005B.3, *available at* 2002 WL 1878123 (SSA-POMS Mar. 21, 2006). That regulation, however, expressly applies only to the situation in which the claimant "was entitled to [disability insurance benefits] before the current entitlement or death." *Id.*, RS 00605.005B. Such is not the case in this matter.

**United States District Judge**